220

Submitted on record and briefs January 8, affirmed
January 27, 1975

STATE ex rel BIGLEY (No. E-5022), *Respondent,*
*v.* BIGLEY, *Appellant.*

531 P2d 296

Kenneth C. Hadley, County Public Defender, Baker, for appellant.

Jesse R. Himmelsbach, Jr., District Attorney, Baker, for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

On April 23, 1973 defendant was found guilty of contempt of court by reason of wilful failure to pay for two children $150 per month support previously ordered in a divorce case, and was sentenced to six months in jail. He took no appeal, but on June 11, 1973 was paroled from the bench to the Corrections Division on condition that he pay the child support previously ordered. ORS 137.520 (5).[1] On June 28, 1974 the bench parole, after hearing on a show cause order, was revoked. This appeal is from the revocation order, and the sole question is whether it is valid.

The divorce decree and child support order is dated March 11, 1971. Since then, the record shows that in April 1971, March 1972 and April 1973 defendant had been ordered to show cause why he should not be held in contempt, and warrants for arrest had issued for him on account of his almost total failure to

---

[1] ORS 137.520 provides:

"(1) The committing magistrate may establish rules and regulations under which any prisoner who is confined in any county jail for any period under six months may be allowed to go upon parole outside the county jail, but to remain while on parole in the legal custody and under the control of the court, and subject to being taken back into confinement at the discretion of the court.

"* * * * *.

"(5) The committing magistrate may parole to the Corrections Division any person sentenced to be confined in the county jail for a period of six months or more."

pay the support ordered. After the April 1973 hearing he was released from jail on June 11, 1973, being assured of a job, on condition he make the payments, and other standard conditions of parole. The evidence shows that in July 1973 he married a woman with four children, who was on a welfare ADC grant of some $418 per month. After this parole, he paid on the support order: June, 0; July, $105; August, $75; September, $75; October, $150; November, $30; and from then on, nothing. His probation officer testified that it took continual prodding to get him to make these payments.

■ Defendant testified variously that from June until he quit his job in November he was paid $250 every two weeks, "* * * over 200 bucks at least, 198. I don't know really how much it was * * *," and that most of the time he worked nine hours per day, six days per week at $3.86 per hour.[2] Despite the fact it was up to him to show cause why the bench parole should not be revoked, he produced no real evidence of his earnings except these highly inconsistent estimates.

The trial court found that

"* * * during a major portion of the time ** * he had the ability to substantially comply * * *.

"* * * [D]efendant has been wilful in such failure * * *."

---

[2] If the latter "estimate" of earnings, which is probably the most accurate of the several he gave, is true, from June to November 1973 defendant was earning around $875 per month (without overtime calculation) before deductions. He testified that he gave his paycheck to his new wife, who put it with her ADC grant, and she paid their expenses. It is hard to see how it was overly burdensome during this period of time for him to make the $150 per month support payments, particularly when he knew failure to do so would invoke the remainder of his jail term.

The cloudy evidence produced by defendant himself, related above, supports the findings. Inability to pay, not contumaciously brought about by the defendant, would have been a defense in the original contempt proceeding, *State ex rel. v. Blackwell,* 181 Or 157, 164, 179 P2d 278, 179 P2d 1023 (1947). Depending upon the evidence produced, that might not have been a defense in the revocation hearing. *Barker v. Ireland,* 238 Or 1, 392 P2d 769 (1964).

■ Defendant quit his job on account of "nervousness" in November 1973. In December, after spending some time at the corner tavern having "two beers," he accompanied a companion to a house where they kicked a Mr. Huff's door down, resulting in Mr. Huff's getting "huffy" and shooting defendant and as a result he could not work for several months. He has been going to the Vocational Rehabilitation Division since. Defendant contends these things should excuse him. They do not. He clearly violated the terms of his parole before they happened, and even if they could—by stretching one's credulity—be considered an excuse, they come too late.

Affirmed.